Filed 11/15/22 P. v. Perrotte CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E077776 |
| v. | (Super.Ct.No. BPR2100621) |
| JEFFREY PERROTTE, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Jorge C. Hernandez, Judge. Affirmed in part; reversed in part with directions.

Michael A. Hestrin, District Attorney, and Jesse Male, Deputy District Attorney, for Plaintiff and Appellant.

Laura R. Sheppard for Defendant and Respondent.

1

# I. INTRODUCTION

The People appeal an order dismissing a parole revocation petition filed by the Department of Corrections and Rehabilitation's Division of Adult Parole Operations (Department). The petition sought to revoke defendant and respondent Jeffrey Perrotte's parole in response to three alleged violations of his parole conditions. The trial court overruled a demurrer to the petition. However, Perrotte subsequently filed a motion to dismiss pursuant to Penal Code[1] section 1385. The motion was heard by a different judge who (1) purported to dismiss one allegation in the interest of justice pursuant to section 1385; (2) construed the remainder of the motion as a motion for reconsideration of the demurrer; and (3) sustained the demurrer with respect to the remaining allegations. The trial court further ordered one of the conditions of Perrotte's parole stricken as invalid. The People challenge each of these orders on appeal.

We conclude that: (1) the People forfeited their challenge to the trial court's order striking a condition of parole; (2) even in the absence of forfeiture, the trial court did not err in concluding the challenged condition was invalid; and (3) because the underlying condition was invalid, any order dismissing the alleged violation of this condition could not have been prejudicial. However, we agree with the People that the trial court erred in reconsidering a prior ruling by a different judge and sustaining the demurrer to the remaining allegations in the parole revocation petition.

---

[1] Undesignated statutory references are to the Penal Code.

## II. FACTS AND PROCEDURAL HISTORY

A. *Perrotte's Underlying Conviction and Parole*

Perrotte was involved in a motor vehicle accident that resulted in the death of another individual. He was driving under the influence at the time, fled the scene of the accident, and attempted to manufacture an alibi to avoid responsibility. As a result of this incident, Perrotte was convicted of second degree murder (§ 187) and sentenced to 15 years to life in state prison. He was released on parole, returned to prison in 2016 for violating his terms of parole, and released on parole again in 2020.

The conditions of Perrotte's parole included the following: (1) "You shall not contact or associate with any person you know or reasonably should know to be a member or associate of a prison gang, disruptive group, or street gang" (condition No. 38); (2) "You shall contact your parole agent within 24 hours of any type of law enforcement contact (e.g. traffic stop, identification check, suspect, witness, etc.)" (condition No. 62); and (3) "You shall not drive or operate a motor vehicle, with the exception of driving to and from work and as required to perform any duties of employment" (condition No. 64).

B. *Petition to Revoke Parole*

On May 19, 2021, the Department filed a petition to revoke Perrotte's parole. The petition alleged Perrotte had engaged in three violations of his parole conditions. According to the petition, a confidential witness had accused Perrotte of being involved in a coordinated operation to smuggle cellular phones into prison for inmate use. Upon investigation of these allegations by the California Department of Corrections and

Rehabilitation (CDCR), CDCR discovered that Perrotte had accepted a collect call from a validated prison gang member in violation of condition No. 38. In the recorded call, the validated gang member referenced favors he had provided to Perrotte while Perrotte was in prison; Perrotte mentioned the possibility of sending money to the gang member; and the gang member used the phrase, "O.G. brother," to refer to Perrotte.

The petition also alleged that during a routine search of Perrotte's residence in May 2021, a parole officer discovered a traffic citation issued to Perrotte by the City of Lake Tahoe for speeding in February 2021. According to the petition, Perrotte had requested and been given permission to travel to the City of Lake Tahoe to participate in a family vacation during this time period. Additionally, the Department had no record of any contact from Perrotte notifying the Department of the citation. Based upon these facts, the Department alleged Perrotte also violated condition No. 62 (reporting condition) and condition No. 64 (driving limitation condition).

Finally, the petition reported that the Department's parole violation decision making instrument (PVDMI)'s recommended response was: "Least to Most Intensive: Continue on Parole with Remedial Sanctions." However, the Department explained that, after consideration, it deemed intermediate sanctions "not appropriate at this time." The Department then listed a series of facts, including: (1) that Perrotte's underlying conviction involved the reckless operation of a motor vehicle; (2) Perrotte's parole had already been revoked on one prior occasion; (3) the violations alleged occurred only five months after Perrotte's release; and (4) Perrotte's attempt to conceal his traffic citation. After listing these facts, the Department expressed the view that remedial sanctions were

4

inappropriate "[d]ue to the seriousness of . . . Perrotte's commitment offense, coupled with his recently discovered behavior and attempt to hide his traffic violation . . . ."

C. *Intermediate Proceedings*

On May 24, 2021, the Hon. Helios J. Hernandez heard and overruled a demurrer to the petition. As the result of an ambiguous record regarding this hearing,[2] the parties agreed to have the Hon. Donal B. Donnelly rehear the demurrer and arraign Perrotte, if necessary, following the ruling on demurrer. After hearing oral argument on the demurrer, Judge Donnelly overruled the demurrer and arraigned Perrotte.

On June 23, 2021, the parties appeared for a hearing on a motion to quash a subpoena issued by Perrotte to the CDCR seeking documents from Perrotte's prison file that might contain reports of gang-related activity. A deputy attorney general appeared on behalf of the custodian of records for the CDCR at this hearing and made an offer of proof that Perrotte's prison file contained "no allegations of a gang validation or gang classification" and that nothing had been done by CDCR "to establish [Perrotte] as a gang member or associate." In response, the deputy district attorney represented that he would not use any portion of Perrotte's CDCR file in the revocation proceedings, and Perrotte's counsel declined to contest the motion to quash, and the matter proceeded without further reference to the documents.

---

[2] At the time, the minutes from the May 24, 2021 hearing reflected that Perrotte was arraigned and had entered denials after Judge Helios J. Hernandez overruled the demurrer. However, both Perrotte's counsel and court staff believed the minutes were inaccurate on this point. As such, Judge Donnelly made a finding that a formal arraignment had not occurred, and the parties agreed to reconduct the proceedings.

5

D. *Motion to Dismiss*

On July 29, 2021, Perrotte filed a motion to dismiss the parole revocation petition in the interests of justice pursuant to section 1385. In support of his motion, Perrotte attached multiple documents obtained in the course of discovery, including a printed version of the computer-based PVDMI form completed by Perrotte's parole officer in this case. The motion was reviewed by the Hon. Jorge C. Hernandez and set for hearing on August 3, 2021.

When the matter was called for hearing, the trial court, with Judge Jorge C. Hernandez presiding, stated, "My thoughts are that this is more akin to a motion for reconsideration of the demurrer," and requested permission from Perrotte's counsel to hear the matter as a reconsideration. The court did not seek the People's consent to proceed as a motion for reconsideration but, instead, asked if the People had any oral argument "in response to the P's and A's filed" by Perrotte. The deputy district attorney objected to the entire hearing arguing that Perrotte's motion was untimely and that the People did not have adequate time to prepare a response. However, the trial court proceeded with hearing the motion over the People's objection.

After reciting general rules pertaining to a demurrer, the trial court conducted an extensive analysis of the printed PVDMI form attached to Perrotte's motion to dismiss and concluded that "Perrotte's PVDMI came up short." Based on this conclusion, the trial court dismissed the allegation related to the violation of condition No. 38 (gang association condition) pursuant to section 1385 and sustained the demurrer to the remaining allegations of the petition.

Perrotte's counsel then orally requested the trial court modify the conditions of Perrotte's parole to strike condition No. 38 as invalid. When asked to provide a response to the request, the deputy district attorney stated: "After hearing the attorney general provide information to the Court . . . , [the] People would submit." As a result, the trial court granted the request to modify Perrotte's conditions of parole to strike condition No. 38.

The People appeal from the orders issued on August 3, 2021.

### III. DISCUSSION

On appeal, the People contend that (1) the trial court erred in dismissing an allegation of the petition because section 1385 does not apply to parole revocation proceedings; (2) the trial court erred in reconsidering the demurrer because one trial judge is not permitted to reconsider a ruling made by a different judge; (3) the trial court erred in sustaining the demurrer because section 1004 does not apply to parole revocation proceedings; (4) the trial court erred in sustaining the demurrer because the allegations of the petition were sufficient to justify revocation of parole; (5) even if deficient, the trial court abused its discretion in denying leave to amend the petition; (6) the trial court erred in modifying Perrotte's conditions of parole because condition No. 38 was valid; and (7) the trial court deprived the People of due process by proceeding with hearing Perrotte's motion without sufficient notice.

We conclude that the trial court lacked authority to dismiss an allegation of the petition pursuant to section 1385, but any error in doing so was harmless because the underlying condition was properly found invalid. However, we agree with the People

7

that the trial court improperly reconsidered a ruling made by a prior judge and that, upon reconsideration, erred in sustaining the demurrer to the remaining allegations of the petition requiring reversal. Given this conclusion, we need not reach the remaining issues asserted by the People.

A. *Trial Court Did Not Err in Modifying the Conditions of Parole*

We first turn to the question of whether the trial court erred by modifying the conditions of Perrote's parole by striking condition No. 38. The only argument advanced by the People on appeal is that condition No. 38 was valid because it was reasonably related to future criminality in furtherance of Perrotte's rehabilitation. We conclude that the argument is forfeited for failure to raise the issue in the trial court and, even in the absence of forfeiture, the trial court did not err.

Generally, a parolee may challenge a condition of parole by filing a writ of habeas corpus. (*In re Taylor* (2015) 60 Cal.4th 1019, 1035.) However, when a parolee has been rearrested for a parole violation or a petition to revoke parole has been filed, section 1203.2 authorizes the trial court to examine and modify the conditions of parole. (*People v. Wilson* (2021) 66 Cal.App.5th 874, 885-886; § 1203.2, subd. (b)(1).) " 'The validity and reasonableness of parole conditions is analyzed under the same standard as that developed for probation conditions.' " (*People v. Relkin* (2016) 6 Cal.App.5th 1188, 1194; *People v. Austin* (2019) 35 Cal.App.5th 778, 787.) Under this standard, probation and parole conditions are reviewed for abuse of discretion (*People v. Navarro* (2016) 244 Cal.App.4th 1294, 1299; *People v. Appleton* (2016) 245 Cal.App.4th 717, 723), but

constitutional challenges to such conditions are reviewed de novo (*Appleton*, at p. 723; *People v. Brand* (2021) 59 Cal.App.5th 861, 867).

Courts apply a "three-part standard" to test the validity of a parole or probation condition. (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118-1119.) A condition will be held invalid if it " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' " (*Id.* at p. 1132; see *People v. Malago* (2017) 8 Cal.App.5th 1301, 1306; see also *People v. Brandão* (2012) 210 Cal.App.4th 568, 573.) Here, the record does not suggest that Perrotte's underlying conviction is in any way related to gang activity, and the condition relates to conduct that is not itself criminal.[3] Thus, the only justification advanced by the People for upholding condition No. 38 is that the condition is reasonably related to future criminality in furtherance of Perrotte's rehabilitation.

However, the People did not argue that condition No. 38 was reasonably related to future criminality in the trial court, did not present any evidence to support this argument, and did not make an offer of proof that any evidence existed to support such a claim. Further, unlike the motion to dismiss, the People did not object to the trial court's consideration of Perrotte's oral request to modify the conditions of his parole or assert that it needed more time to prepare a response. Instead, when asked by the trial court to

---

[3] Indeed, the conduct is generally considered protected under both the United States and California Constitutions. (U.S. Const., 1st. Amend. [freedom of association]; Cal. Const., art. I, § 1 [same]; *People v. Garcia* (1993) 19 Cal.App.4th 97, 102.)

9

respond to Perrotte's request, the deputy district attorney stated: "After hearing the attorney general provide information to the Court . . . , the People would submit." The failure to raise an argument in the trial court forfeits the issue on appeal. (*People v. Parker* (2022) 13 Cal.5th 1, 35, fn. 8 [party "failed to raise this argument before the trial court, forfeiting it on appeal"]; *People v. Valdez* (2012) 55 Cal.4th 82, 118 [same].)

Even in the absence of forfeiture, we find no error in the trial court's determination that condition No. 38 was invalid. The "third prong requires more than just an abstract or hypothetical relationship between the . . . condition and preventing future criminality." (*In re Ricardo P.*, *supra*, 7 Cal.5th at p. 1121; see *In re Martinez* (1978) 86 Cal.App.3d 577, 583 [A condition is not reasonably related to future criminality simply because it "could abstractly be related to preventing future crime."].) Instead, "[t]here must be a factual 'nexus' between the crime, defendant's manifested propensities, and the . . . condition. . . . There must be some rational factual basis for projecting the possibility that defendant may commit a particular type of crime in the future, in order for such projection to serve as a basis for a particular condition . . . ." (*Martinez*, at p. 583; see *In re Edward B.* (2017) 10 Cal.App.5th 1228, 1236 ["Without a reasonable factual nexus, there is no reasonable connection and therefore 'no reasonable basis for sustaining a condition.' "].) Additionally, the requirement that a "condition must be ' "reasonably related to future criminality" ' contemplates a degree of proportionality between the burden imposed by a . . . condition and the legitimate interests served by the condition." (*In re Ricardo P.*, at p. 1122.) The condition is invalid where such proportionality is lacking. (*Ibid.*)

10

We believe the evidence, in this case, was simply too attenuated to support a finding that condition No. 38 was valid. There was no evidence that Perrotte ever committed a gang-related crime prior to his conviction; no evidence that Perrotte committed a gang-related crime or engaged in gang-related prohibited conduct while in prison; and no evidence that Perrotte ever held himself out as a gang member. The only evidence cited by the People in support of upholding the condition is the substance of a single recorded phone call between Perrotte and a validated prison gang member.[4]

However, the trial court was not required to view this evidence in a vacuum. The recorded phone call was obtained as part of a larger CDCR investigation into allegations of possible criminal activity by Perrotte. The attorney general subsequently appeared on behalf of the CDCR in the trial court proceedings and represented that Perrotte's prison file contained "no allegations of a gang validation or gang classification," and that CDCR had not been able to "establish [Perrotte] as a gang member or associate." Thus, even assuming that the statements made in this phone call should be interpreted in the manner suggested by the People, a broad prohibition against any contact or association with any

---

[4] Specifically, the People cite to the fact that Perrotte referred to the validated gang member as a "mentor"; the validated gang member referred to Perrotte as an "O.G. brother"; and the two made references that could be interpreted as a "gang protection arrangement." We note that the People cite to this evidence on the appeal notwithstanding the fact that the district attorney represented to the trial court that he did not intend to rely on information contained within Perrotte's CDCR file.

known gang member based solely on this one conversation would appear incredibly disproportionate to any risk of future criminality presented by the facts of this case.[5]

The evidence here was insufficient to provide a rational factual basis to project the possibility that Perrotte would commit a gang-related crime in the future. As such, the trial court did not err in modifying the conditions of Perrotte's parole to strike condition No. 38.

B. *The Dismissal of an Allegation Pursuant to Section 1385 Was Not Prejudicial*

The People also argue that the trial court erred when it dismissed the allegation based upon a violation of condition No. 38 pursuant to section 1385. While we agree with the People that the trial court had no authority to dismiss the allegation pursuant to this statute, we conclude the People could not have suffered prejudice from this error.

While a parole revocation hearing is governed by provisions in the Penal Code, it is not a criminal action but a special proceeding established by statute. (*People v. Perlas* (2020) 47 Cal.App.5th 826, 831-832 (*Perlas*).) As such, several published decisions by the Courts of Appeal have recognized that section 1385, which refers to the dismissal of "actions," does not apply to such proceedings. (*People v. Wiley* (2019) 36 Cal.App.5th 1063, 1065 [§ 1385 does not authorize a trial court to dismiss a parole revocation petition]; *People v. Williams* (2021) 71 Cal.App.5th 1029, 1044 ["[A] revocation petition

___

[5] Notably, Perrotte's conditions of parole still include less intrusive prohibitions designed to discourage future gang-related criminality. Specifically, the conditions of parole continue to prohibit Perrotte from violating gang abatement injunctions, ordinances, or court orders; prohibit Perrotte from wearing or displaying any clothing, items, or paraphernalia associated with gang affiliation; and prohibit Perrotte from coming within 300 feet of any location known for gang activity.

cannot be dismissed in the interest of justice under section 1385."].) Thus, it was error for the trial court to rely on the authority of section 1385 to dismiss an allegation of a parole revocation petition.

Nevertheless, the dismissed allegation related to Perrotte's violation of condition No. 38. The trial court subsequently found this condition invalid and, as we explained *ante*, we have found no error in the trial court's determination. Thus, even if the trial court had not erred and instead proceeded to conduct a hearing on the merits of the allegation, the alleged violation of condition No. 38 could not have served as a proper basis for revocation of Perrotte's parole; and any error in prematurely dismissing the allegation could not have been prejudicial.

C. *The Trial Court Erred in Reconsidering the Demurrer*

We also agree with the People that the trial court erred in reconsidering the prior ruling on demurrer made by a different judge. "The rule that one superior court judge may not reconsider the previous ruling of another superior court judge applies in a variety of settings, in both criminal and civil cases." (*People v. Goodwillie* (2007) 147 Cal.App.4th 695, 713; see *In re Alberto* (2002) 102 Cal.App.4th 421, 427-428.) "A trial court 'generally has the authority to correct its own prejudgment errors.' [Citation.] 'Different policy considerations, however, are operative if the reconsideration is accomplished by a *different* judge,' " and " 'the general rule is just the opposite: the power of one judge to vacate an order made by another judge is limited.' [Citation.] 'For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge [improperly]

13

places the second judge in the role of a one-judge appellate court,' and thus 'an order " ' " 'made in one department during the progress of a cause can neither be ignored nor overlooked in another department . . . .' " ' " ' " (*People v. Saez* (2015) 237 Cal.App.4th 1177, 1184-1185.) "Such review would violate the California Constitution." (*People v. Barros* (2012) 209 Cal.App.4th 1581, 1598.)

In this case, Judge Jorge C. Hernandez explicitly stated his intent to reconsider the prior ruling on demurrer made by a different judge. Thus, there is no question that the trial court engaged in an improper reconsideration. Upon realizing that Perrotte's motion to dismiss was, in substance, a motion seeking reconsideration of the issues already decided in the prior demurrer hearing, Judge Jorge C. Hernandez should have directed the moving party to the judge who originally ruled on the demurrer. (*Ziller Electronics Lab Gmbh v. Superior Court* (1988) 206 Cal.App.3d 1222, 1232 ["The proper procedure upon a motion for reconsideration or a renewed motion is for the second judge to direct the moving party to the judge who ruled on the first motion."]; see *Board of Medical Quality Assurance v. Superior Court* (1988) 203 Cal.App.3d 691, 703-704 [The "correct procedure was to transfer the entire application . . . to [the original judge] to permit the court to exercise its authority to reconsider . . . ."].) Thus, to the extent Judge Jorge Hernandez took it upon himself to vacate Judge Donnelly's ruling by reconsidering the demurrer, it was error.[6]

---

[6] The record is insufficient for us to evaluate the merits of Perrotte's suggestion that it was proper to reconsider the demurrer because Judge Donnelly was unavailable. While the unavailability of the first judge is a recognized exception to the rule against

*[footnote continued on next page]*

Despite this error, " 'an appellate court cannot *reverse* a trial court's ruling which correctly follows the law merely because it disagrees with an earlier, incorrect ruling.' " (*In re Alberto*, *supra*, 102 Cal.App.4th at p. 431; *People v. Goodwillie*, *supra*, 147 Cal.App.4th at p. 714 [error in reversing first judge's order does not require reversal absent prejudice as a result of error]; *People v. Edward D. Jones & Co.* (2007) 154 Cal.App.4th 627, 634 [even if second judge should not have effectively overruled a first judge's order on demurrer by ruling on a motion for judgment on the pleadings, the error must still be analyzed on the merits for prejudice]; *Prickett v. Bonnier Corp.* (2020) 55 Cal.App.5th 891, 896-897 ["[A]ny error in rehearing the motion resulted in the correct result, making it ineluctably harmless."].) Thus, we proceed to analyze the merits of Judge Jorge C. Hernandez's ruling sustaining the demurrer upon reconsideration. However, as we explain, we conclude that it was also error to sustain the demurrer.

---

reconsideration by a different judge, "unavailability" generally refers to the judge's absence of authority to rule, not a temporary physical absence from a specific courtroom. (*Geddes v. Superior Court* (2005) 126 Cal.App.4th 417, 426 [original judge had been disqualified and "having no authority to rule, [was] 'unavailable' " for purpose of reconsideration]; *Alvarez v. Superior Court* (2004) 117 Cal.App.4th 1107, 1111 [original judge unavailable to reconsider after being appointed to federal court].) The record shows that Judge Donnelly was a retired judge sitting on assignment; but the demurrer and motion to dismiss were heard in different departments, and nothing in the record suggests Judge Donnelly was no longer sitting on assignment for the Riverside County Superior Court system at the time Judge Jorge C. Hernandez construed and heard the motion to dismiss as a motion for reconsideration. Further, nothing showed that Judge Donnelly was unavailable to hear the case on that date or any future date, although he may have been assigned to a different court location.

D. *The Trial Court Erred in Sustaining the Demurrer Upon Reconsideration*

    1. <u>A Parole Revocation Petition Is Subject to Demurrer</u>

As an initial matter, the People argue that a demurrer is not available in a parole revocation proceeding because section 1004 applies only to a complaint, indictment, or information involving the violation of a public offense. We disagree.

By its very terms, section 1004 permits a defendant to demur to an "accusatory pleading." (§ 1004.) While we recognize that the statutes do not specifically reference parole revocation petitions, this omission is understandable in light of the fact that "[h]istorically, [the Board of Parole Hearings] was responsible for conducting parole revocation hearings." (*People v. DeLeon* (2017) 3 Cal.5th 640, 647.) Only "[u]nder the Realignment Act" did "jurisdiction over most petitions to revoke parole shif[t] to the superior courts." (*Ibid.*) This revised statutory framework now requires the parole agency to file a petition in the superior court containing the allegations supporting revocation of parole. (§§ 1203.2, subd. (b), 3000.08, subd. (f).) Unquestionably, such a petition constitutes an accusatory pleading.[7]

Additionally, it appears that a demurrer is available in parole revocation proceedings, as numerous Courts of Appeal have reached the merits of such demurrers without questioning the validity of the procedure. (*People v. Osorio* (2015) 235

---

    **[7]** For this reason, we are unpersuaded by the People's argument that the reasons for finding section 1385 inapplicable to revocation petitions should equally apply to section 1004. By its very terms, section 1385 is limited only to "action[s]" (§ 1385, subd. (a)), whereas section 1004 applies more broadly to "accusatory pleadings" (§ 1004).

Cal.App.4th 1408, 1415 (*Osorio*) [demurrer to parole revocation petition erroneously overruled]; *People v. Zamudio* (2017) 12 Cal.App.5th 8, 17 [demurrer to parole revocation petition properly overruled]; *People v. Castel* (2017) 12 Cal.App.5th 1321, 1325 [demurrer to parole revocation petition properly overruled]; *Perlas*, *supra*, 47 Cal.App.5th at p. 837 [error to sustain demurrer to parole revocation petition].) We are thus unpersuaded by the People's argument that a demurrer is unavailable in parole revocation proceedings.

It appears entirely appropriate to permit a demurrer to a petition to revoke parole (which acts as an accusatory pleading) as a means of testing the sufficiency of such a pleading as would occur with respect to a complaint, information, or indictment. The suggestion that there is no means to challenge the sufficiency of an accusatory pleading is untenable and may result in a denial of due process by allowing the case to proceed on a defective petition. (See *Morrisey v. Brewer* (1972) 408 U.S. 471, 487 [explaining the parolee's due process rights and specifically holding that "[t]he [petition] should state what parole violations have been alleged"]; see also *Williams v. Superior Court* (2014) 230 Cal.App.4th 636, 647.) Such a rule would leave an accused parole violator with no means of challenging a facially defective petition and necessitate a full hearing to challenge the accusation when such time and expense may be completely unnecessary.

2. The Allegations of the Petition Were Sufficient

" ' "[A] demurrer raises an issue of law as to the sufficiency of the accusatory pleading, and it tests only those defects appearing on the face of that pleading." [Citation.]' . . . On appeal, we review the order overruling [a] defendant's demurrer de

17

novo." (*Perlas*, *supra*, 47 Cal.App.5th at p. 832.) Thus, in the context of a parole revocation proceeding, " '[w]e exercise our independent judgment as to whether, as a matter of law, the petition alleged sufficient facts to justify revocation of [a] defendant's parole.' " (*Ibid*.) In our view, the allegations of the petition in this case were sufficient to withstand a demurrer.

When a parole agency files a petition to revoke parole, "[t]he petition must include a written report detailing the terms and conditions of parole and how they were violated, the parolee's background, and the parole agency's recommendation to the court." (*Perlas*, *supra*, 47 Cal.App.5th at p. 833; *People v. Williams*, *supra*, 71 Cal.App.5th at p. 1039; Cal. Rules of Court, rule 4.541.) "In addition, the report 'must include the reasons for that agency's determination that intermediate sanctions without court intervention as authorized by Penal Code section[n] 3000.08(f) . . . are inappropriate responses to the alleged violations.' " (*Williams*, at p. 1039.) "The explanation of why intermediate sanctions are inappropriate must 'be "individualized to the particular parolee, as opposed to a generic statement." ' " (*Ibid.*)

The petition in this case attached a written report that detailed the terms and conditions of Perrotte's parole, contained allegations of how the Department believed Perrotte violated specific conditions, contained information on Perrotte's background, and included the Department's recommendation to the trial court. The report disclosed that the PVDMI recommended a sanction less severe than revocation. Nevertheless, under the heading of "Evaluation," the report stated "Intermediate sanctions have been considered. However, they have been deemed not appropriate at this time." It then listed

18

a series of facts, including: (1) Perrotte's underlying conviction involved the reckless operation of a motor vehicle; (2) Perrotte's parole had already been revoked on one prior occasion; (3) the violations alleged occurred only five months after Perrotte's release; and (4) Perrotte's attempt to conceal his traffic citation.

These facts alleged in support of the Department's determination that intermediate sanctions were deemed not appropriate are all individual to Perrotte and, if true, could support the exercise of discretion to override a PVDMI recommendation. A parole violation directly related to the conduct involved in the commitment offense,[8] a repeated violation of parole conditions, and an attempt to conceal known violations from parole officers are all factors that could suggest a more severe response is warranted than compared to a parolee who engaged in the same violation without such factors. In light of these allegations, we find no deficiency in the allegations of the petition.

3. The PVDMI Document Was Not a Proper Matter to Consider on Demurrer

In order to conclude that the allegations of the petition were insufficient in this case, the trial court undertook an extensive examination of the printed PVDMI form, analyzed the document under the principles set forth in *Osorio*, concluded that "Perrotte's PVDMI came up short," and sustained the demurrer on this basis. On appeal, Perrotte argues that we should take this same approach and analyze the adequacy of the PVDMI process under the "Four-Question *Osorio* Test." We decline to do so.

---

[8] As recognized in *Osorio*, the fact that a violation is directly related to the commitment offense is one destabilizing factor that can justify overriding a PVDMI recommendation. (*Osorio*, *supra*, 235 Cal.App.4th at p. 1414.)

Even if we were persuaded by the reasoning set forth in *Osorio*, *supra*, 235 Cal.App.4th 1408,[9] Perrotte's argument fails for a more fundamental reason. "[A] demurrer is only authorized if the defect about which the demurring party complains 'appears upon the face' of the pleading." (*Hudson v. Superior Court* (2017) 7 Cal.App.5th 999, 1011.) Thus, " ' "[t]he defendant cannot strengthen his demurrer by *bringing in evidentiary material* which discloses a defect in the (pleading). . . ." [Citation.] The sole question raised by demurrer is whether the pleading is *facially*—not factually—deficient.' " (*People v. Chaides* (2014) 229 Cal.App.4th 1157, 1163.) The printed PVDMI form in this case was not part of the Department's petition or the required report accompanying the petition. Nor was it the subject of a request for judicial notice. Instead, it was attached as an exhibit to Perrotte's motion to dismiss. A party is not permitted to introduce material outside of the pleadings in order to show a purported

---

[9] In our view, the analysis set forth in *Osorio* cannot be readily applied to other cases because the opinion fails to set forth a clear picture of the procedural posture of the case. The Court of Appeal conducted a detailed analysis of the PVDMI process without a clear explanation of how the PVDMI became part of the appellate record. (*Osorio*, *supra*, 235 Cal.App.4th at pp. 1413-1415.) The Court of Appeal further concluded that "it was error for the [parole] agent to select" revocation as the appropriate sanction, without any explanation of why the parole agent's actions were within the proper scope of appellate review when it was the trial court's order on demurrer that was purportedly the order on appeal. (*Id.* at p. 1415.) Finally, it is well settled that even where a pleading is defective on its face, any error in overruling a demurrer is not prejudicial where the allegations are subsequently fully proved at trial or a hearing on the merits. (*People v. Beesly* (1931) 119 Cal.App.82, 87; *People v. Schoeller* (1950) 96 Cal.App.2d 61, 64-65; *People v. Boston* (1958) 164 Cal.App.2d 66, 69.) Despite the fact that the parole revocation proceeding in *Osorio* resulted in a full hearing on the merits, the Court of Appeal reversed the order revoking parole based upon its conclusion that the interim order overruling a demurrer was erroneous, without any discussion of prejudice. (*Osorio*, at pp. 1415-1416.) Because the procedural posture of *Osorio* is unclear on many points, we decline to use it as a guidepost in this case.

defect on demurrer. The trial court offered no explanation for why it believed it was proper to consider this document in the context of a demurrer, and Perrotte has offered no basis for this court to do so now on appeal.

Nothing in the relevant statutes or California Rules of Court requires that the PVDMI documents be included as part of a petition for revocation or accompanying report (§§ 1203.2, subd.(b), 3000.08, subd. (f); Cal. Rules of Court, rule 4.451), and the Department did not include the printed PVDMI form as part of its petition or report in this case. While it may be true that the Department failed to follow the proper procedures in utilizing the PVDMI, in this case, when the PVDMI is not made part of the accusatory pleading, the issue cannot be resolved on demurrer. (*People v. Biane* (2013) 58 Cal.4th 381, 388 ["A demurrer is not a proper means of testing the sufficiency of the *evidence* supporting an accusatory pleading."].) Thus, it was improper to consider the printed PVDMI form in order to test the sufficiency of the revocation petition, and the trial court erred in doing so.

E. *We Need Not Resolve Other Issues Raised by the People*

The People also argue the trial court abused its discretion in denying leave to amend and deprived the People of due process by hearing Perrotte's motion without adequate notice. However, we need not address these arguments in light of our conclusion that the trial court erred in entertaining the motion for reconsideration and further erred in sustaining the demurrer upon reconsideration. Because the order sustaining the demurrer upon reconsideration must be reversed, these issues are not relevant to the disposition of this appeal.

## IV.  DISPOSITION

The order modifying Perrotte's conditions of parole to strike condition No. 38 and the order dismissing the allegation of the revocation petition based upon an alleged violation of condition No. 38 are affirmed.  The order sustaining the demurrer to the remaining allegations of the petition for revocation is reversed.  Upon remand, the trial court is directed to enter a new order denying the motion for reconsideration.[10]

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

CODRINGTON
Acting P. J.

RAPHAEL
J.

---

[10] While we have concluded it was error for the trial court to reconsider a ruling made by a prior judge, instructing the trial court to refer the parties to the prior judge upon remand would serve no purpose in this case.  A demurrer raises only issues of law (*People v. Biane*, *supra*, 58 Cal.4th at p. 388), and we have already determined based upon our independent review that the allegations of the petition were sufficient to withstand a demurrer.