[Civ. No. 8182. Third Dist. May 26, 1953.]

A. F. KOHLE, Appellant, v. HAROLD WESLEY SINNETT, Respondent.

Gibbs & Gideon for Appellant.

Glenn D. Newton for Respondent.

VAN DYKE, P. J.—Plaintiff-appellant Kohle brought action against defendant-respondent Sinnett to recover damages for personal injuries which appellant sustained when respondent's automobile in which plaintiff was riding, and which was being driven by respondent, left the road and plunged over an embankment. Appellent alleged that his status in the automobile at that time was that of a passenger. Respondent, answering, took the position that appellant was his guest. A jury brought in a verdict for respondent and from the judgment entered thereon this appeal is taken.

The accident happened August 23, 1950. Appellant, a resident of Redding, California, and others with him, owned certain timber lands near the town of Ruth in Trinity County. He had first met respondent in the preceding June. Respondent's occupation was that of a logging contractor and he was engaged in that business near Mount Shasta in Siskiyou County. Early in August one Wilson became interested in purchasing appellant's timber land and asked him to recommend a good logger, as Wilson wanted to find out, before he bought the land, what it would cost to log it. Appellant suggested respondent Sinnett. Wilson talked to respondent over the telephone and made tentative arrangements to meet him later. Accordingly, about a week thereafter, Wilson called respondent and asked him to meet with him at Ruth, look over appellant's timber land, and give him a logging estimate. Wilson also asked respondent to pick up appellant as respondent drove through Redding and bring him to Ruth

so he could point out the boundary lines of the property. Respondent agreed to do so and accordingly called appellant on the phone, told him about the request of Wilson and the proposed meeting at Ruth on the next day, and asked him to go. Appellant agreed and on the next morning the two men journeyed to Ruth in respondent's pickup truck. They met Wilson and drove to the land they had come to see. As they drove along, appellant pointed out his boundaries and the men made various stops to look over the ground. After the inspection trip respondent gave to Wilson his estimate of logging costs which was so high that Wilson at once refused to buy appellant's property. The accident happened within a mile of Weaverville while the two men were returning to Redding. There is evidence that conflicts with the foregoing statement of facts, but under the well-recognized rule we must disregard such conflicts.

Appellant contends that as a matter of law he was a passenger in respondent's car when he received his injuries and therefore says it was error for the trial court to instruct the jury on the subject of guest-passenger relationships and the differing standards of care applicable in each. The contention is without merit. It was a question of fact for the jury to determine as to whether appellant was guest or passenger and the court with propriety submitted that issue to the jury under appropriate instructions, the correctness of which is not questioned on this appeal. It is true that each of these two men was interested in going from Redding to Ruth and dealing with Wilson there, but their interests were several and there was no necessary connection between them which rendered the presence of appellant such a matter of concern to respondent as to make appellant his passenger as a matter of law. The jury could infer that while respondent did in a sense ask appellant to accompany him on the trip, he did so at the request of Wilson, which request he merely passed on to appellant, offering appellant at the same time the accommodation of respondent's car to make the trip to meet Wilson. This is not, we may assume, the only inference that may be drawn from the facts, but it is a permissible inference and that is enough. ▮ As the trial court instructed the jury: ''A guest is one who is invited, either expressly or impliedly, to enjoy the hospitality of the driver of a vehicle; who accepts such hospitality; and who takes a ride . . . on his own business, without making any return to, or conferring any benefit upon the driver of the vehicle as

compensation for the ride." It was Wilson who was dealing with appellant in the purchase of appellant's timber. It was Wilson who asked that respondent bring appellant to Ruth. Respondent agreed with Wilson to do this and so informed appellant, and when appellant accepted the ride from Redding to Ruth in respondent's car the jury from the facts we have related could find that he did so on his own business and not with any purpose of conferring any benefit upon respondent as compensation for the ride or otherwise. It may be very true, as argued by appellant, that appellant did in fact confer a benefit upon respondent by pointing out the lines of his property, but if so the jury could have inferred that it was purely incidental to appellant's dealings with Wilson and not done for any purpose of benefiting respondent. It requires no citation of authority other than the language of the guest law itself to sustain the proposition that the court was compelled to submit to the jury under appropriate instructions the question of whether appellant was guest or passenger in respondent's car. Appellant does not and could not upon this record contend that, if appellant was a guest, the verdict of the jury lacked support.

 Appellant contends that the trial court committed prejudicial error in striking out certain testimony given by the Justice of the Peace of Weaverville Township concerning an alleged plea of guilty entered by respondent in response to a citation for a violation of section 510 of the Vehicle Code. The following occurred: On cross-examination respondent was asked if he had pleaded guilty to a charge of excessive speed in the justice's court. He replied in the negative. Thereafter appellant's counsel called the justice of the peace as a witness. He testified that on October 11, 1950, the respondent came before him to answer to a charge of excessive speed in violation of section 510 of the Vehicle Code. We now quote from the transcript: "Q. What was that plea? A. Well, in the exact words, I don't believe I remember. I have had a good many pleas since then but it was in the effect of 'guilty.' The man paid his fine. . . . It was some time after the citation had come into the court before Mr. Sinnett, I believe was his name, was able to come down here. He was in Weed, I believe, and he wrote me and asked for an extension of time, which I granted. And finally when he did come down on October 11th—his trial was set for October 18th and he was here a few days ahead of time and

he came in and said he wanted to settle up, whatever it was. I showed him the citation and at that time asked him if he was guilty, and he said he didn't know for sure whether he was or not. He said the speed limit up there was on any normal highway, and after I explained to him that it could be ten miles an hour in certain zones, even though it was a fifty-five mile speed limit, well, he said, probably he was guilty then, I think, as near as I can remember.'' On motion the court struck out the evidence, observing that it was not an unqualified plea of guilty and instructed the jury to ''disregard all evidence on this question and dismiss it from your minds.'' The entries in the docket showing the case against respondent and the disposition thereof were not offered in evidence. However, the testimony of the justice of the peace as to his conversation with respondent was admissible as statements against interest. Such statements made to anyone would have been admissible and they were no less so because made to the justice of the peace. But when we consider what was said by respondent in his discussion with the justice and the attendant circumstances we think it cannot be said that the error would justify reversal under the constitutional mandate. We have judicial knowledge that it is a long way from Weed to Weaverville; respondent appeared in response to the citation after having received the convenience of a postponement at his request; a trial would involve a second appearance plus attorney's fees, plus witnesses, and the attendant expense; respondent stated to the justice that ''he wanted to settle up, whatever it was''; he stated he didn't believe he was guilty, but on further discussion admitted that he probably was; the justice said he couldn't remember exactly what the plea was, but it was in the effect of guilty and the man paid his fine. These things considered, the transaction amounted in practical effect to a common law plea of *nolo contendere* and we do not believe that a jury of practical people would have given any particular weight to the statements made during the conversation with the justice as testified to by him. Certainly we ought not to reverse the judgment upon this assignment of error.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 22, 1953. Carter, J., was of the opinion that the petition should be granted.